810 So.2d 1226 (2002)
T.A. GRANT, Jr. and Martha B. Grant Revocable Inter Vivos Trust, Plaintiff-Appellee,
v.
Joseph Bailey GRANT and Gail Grant, Defendant-Appellant.
No. 35,635-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
Rehearing Denied March 28, 2002.
Paul H. Kidd, Monroe, for Appellant Rex D. Rainach.
Joseph Bailey Grant, In Proper Person.
Gail Grant, In Proper Person.
Paul D. Spillers, Monroe, for Appellee.
*1227 Before BROWN, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
The defendants, Joseph and Gail Grant, appeal a judgment in favor of the plaintiff, the "T. A. Grant, Jr. and Martha Grant Revocable Inter Vivos Trust." The district court granted a motion for partial summary judgment, finding that Joseph B. Grant did not have any viable rights as a forced heir in the estates of his parents. For the following reasons, we affirm.

FACTS
On June 28, 1982, Thomas A. Grant, Jr., and his wife, Martha, established a Revocable Inter Vivos Trust ("RIVT"), stating their intent to "transfer, deliver and donate to the trustee the property which they presently own, movable, immovable, and mixed...." On that date, the trustees accepted the trust in writing. The principal and income beneficiaries are the Grants' four grandchildren.[1] On this same date, both Mr. and Mrs. Grant executed wills which established three trusts: a disposable portion trust with substantially the same terms and conditions as the RIVT, and legitime trusts for their two sons, T.A. Grant, III, and Joseph B. Grant ("J.B.Grant").
On July 30, 1982, a month after executing the RIVT and his will, Mr. Grant died. Shortly thereafter, his sons, who have law degrees, signed a document renouncing "any right given to them by law to demand a reduction of the legacies and donations" made in the will and the RIVT. A detailed descriptive list was filed with the petition to probate Mr. Grant's will, listing property valued at $6.2 million with debts at $2.5 million. The executor stated in this document that all of the described property had been donated and transferred to the RIVT. To date, the succession remains open.
In September 1986, Martha Grant died. Once again, both sons signed a document renouncing their rights as forced heirs to demand a reduction of the donations to the trust and the legacies in the will. The detailed descriptive list in Mrs. Grant's succession proceedings listed her property as only an undivided ½ interest in the RIVT. Her succession also remains open. In January 1997, J.B. Grant filed a "Revocation of Renunciation of Right to Demand Reduction" in his parents' succession proceedings.
On August 14, 1997, the RIVT co-trustees, T.A. Grant, III and James E. Lowery, filed a petition for declaratory judgment naming as defendants Joseph B. Grant and his wife, Gail. The petition alleged that J.B. Grant had waived all of his forced heirship claims and prayed for a judgment declaring that J.B. Grant did not have any viable forced heirship rights and that all property, movable and immovable, owned by T.A. Grant, Jr. and Martha B. Grant became the property of the RIVT in June 1982. The petition also made incidental demands and sought damages.
The defendants, J.B. and Gail Grant, answered the petition and filed several reconventional demands which asserted that: 1) J.B. Grant was the sole trustee of the RIVT; 2) Mr. Grant's succession owns all of the property allegedly transferred to the RIVT; 3) all of the transfers to the RIVT were simulations; 4) as to movables the transfers to the RIVT were not in proper form or were not completed; 5) movables not listed in the RIVT instrument *1228 were not transferred; and 6) J.B. Grant's legitime trust should be funded. To these reconventional demands, the RIVT filed a number of exceptions, including no cause and no right of action, res judicata and prescription.
A hearing on these exceptions was held on July 20, 1999. The trial court issued an oral ruling at the close of the hearing and signed a written judgment in accordance therewith on August 6, 1999, granting the exceptions. J.B. Grant appealed that judgment. In an unpublished opinion, this court reversed the trial court's judgment and remanded for further proceedings, stating that the "proper procedural vehicle is a motion for summary judgment. If there are no questions of material fact, a judgment can be rendered." T.A. and Martha Grant Revocable Inter Vivos Trust v. Joe Bailey Grant and Gail Grant, 33,685 (La.App.2d Cir.10/24/00) 775 So.2d 706.
Subsequently, the trustees filed a motion for partial summary judgment alleging that Joseph B. Grant could not establish a viable forced heirship right in his parents' property because he had previously signed a waiver of any such right. After a hearing, the district court granted the motion for partial summary judgment, finding that Joseph Grant did not have any viable rights as a forced heir in his parents' estate and awarding the RIVT $5,000 in damages.[2] The court issued a certification pursuant to LSA-C.C.P. art. 1915(B) stating that its judgment was final and that there was no just reason to delay an appeal. The defendants appeal the judgment.

DISCUSSION
The defendants contend the district court erred in granting the motion for partial summary judgment. They argue that J.B. Grant has a right as a forced heir to recover property from the successions of his parents.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the mover is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
A trust is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. LSA-R.S. 9:1731. The provisions of the Louisiana Trust Code shall be accorded a liberal construction in favor of freedom of disposition. LSA-R.S. 9:1724. Whenever possible *1229 a trust instrument will be construed so as to uphold the validity of the trust and render the instrument effective. In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy. Lelong v. Succession of Lelong, 164 So.2d 671 (La.App. 3rd Cir.1964).
In the present case, the plaintiffs submitted into evidence the trust instrument, in which the Grants expressed their intent to transfer all of their property to the RIVT co-trustees, who testified in affidavits that they took possession of the property in 1982. Plaintiffs presented the waivers of reduction signed by J.B. Grant and T.A. Grant, III, renouncing their right to demand a reduction of the donations made to the RIVT. The record also contains the detailed descriptive list filed in T.A. Grant's succession, stating that in June 1982 he donated and transferred all of the property owned by him, including the property described therein, to the RIVT.
Thus, the plaintiffs presented evidence demonstrating that the settlors intended to transfer all of the property which they owned to the trust, while retaining a lifetime interest in trust income. The defendants dispute the validity of these property transfers and are required to show that there are facts which could satisfy their evidentiary burden at trial. In his affidavit, J.B. Grant asserts that his parents' donations to the RIVT were not effective because the Grants continued to exercise control over their assets until their deaths by writing checks and living in the family home. He also stated that other movable property was not transferred in compliance with the law, including checking and investment accounts, stock certificates and negotiable instruments payable to the settlor, T.A. Grant, Jr.
The trust instrument is not required to contain specific language of conveyance provided it is clear that title is being transferred to the trustee, because the creation of a trust automatically and by definition effects a transfer of title to the trust property pursuant to LSA-R.S. 9:1731. The trust instrument must identify the property being transferred in trust either specially, as in a description of land, or generally, as under a universal legacy. 11 Leonard Oppenheim & Sidney Ingram, Louisiana Civil Law Treatise, Trusts § 102 (1977). A universal legacy is a disposition of all of the estate. LSA-C.C. art. 1585 (formerly C.C. art. 1606).
Here, the trust instrument provides that the settlors "hereby transfer, deliver and donate to the trustee the property which they presently own, movable, immovable and mixed, including but not limited to that property described on Exhibit A." The trustee is directed to hold the property in trust and "administer it for the benefit of both spouses." Exhibit A, attached to the trust instrument, contains descriptions of the land being transferred. Thus, the trust instrument specifically identified the immovable property and generally identified all other property owned by the Grants as trust property.
The defendants have not shown how any subsequent financial transactions of T.A. Grant, Jr. and Martha Grant were inconsistent with the transfer of title to their property in the trust, since the Grants were the income beneficiaries who would have been able to exercise control over those funds. Nor did the defendants show that the Grants' use of their home while alive was unreasonable.
The donor is permitted to reserve for his own advantage, or to dispose of for the advantage of another, the enjoyment of the immovable property given. LSA-C.C. art. 1533. Here, following creation of the trust, Mr. Grant lived in the home for one month until his death and Mrs. Grant occupied *1230 the home for approximately four years thereafter. This situation continued with the acquiescence of the heirs, since J.B. Grant did not object to the use of the home while his parents were alive. Under the language of the trust instrument, one could reasonably conclude that the Grants intended that they would continue to use the property in the same manner as they did at the time the trust was created. The settlors' use was consistent with Article 1533, which permitted them, as donors, to reserve for themselves the enjoyment of the immovable property given. Thus, contrary to the defendants' contentions, the evidence demonstrates that the settlors intended to transfer title to all of their property to the trustees and that they adequately identified the property being transferred in trust.
Based upon this record, we must conclude that the defendants have failed to produce evidence that would satisfy their burden of proving that the settlors' donations to the RIVT were ineffective to transfer title to their property. Consequently, we cannot say the district court erred in concluding that all of the property owned by the settlors was validly transferred to the RIVT such that J.B. Grant's waiver of his right to demand a reduction of the trust donations precluded him from asserting any rights as a forced heir to the estates of his parents. Therefore, the district court correctly granted the motion for partial summary judgment. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the district court's judgment granting the motion for partial summary judgment is affirmed. Costs of this appeal are assessed to the appellants, Joseph Bailey Grant and Gail Grant.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, WILLIAMS, STEWART, and GASKINS, JJ.
Rehearing denied.
NOTES
[1] The principal beneficiaries of the RIVT were the three children of T.A. Grant, III, and the daughter of Joseph B. Grant. For as long as they lived, the settlors, Mr. and Mrs. Grant, were the income beneficiaries. Mr. Grant died in 1982 and Mrs. Grant died in 1986. The grandchildren were the successor income beneficiaries.
[2] The court awarded $5,000 to the RIVT for payment of the balance due on a loan to J.B. Grant. We note that this part of the judgment was not assigned as error and so the issue of the loan repayment is not before this court on appeal.