NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-1179

JILL BARNHILL

VERSUS

LYNN H. WOOD,  ET AL.

\*\*\*\*\*\*\*\*\*\*
APPEAL
FROM THE
15TH  JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, C-20061179
HONORABLE DURWOOD CONQUE,   PRESIDING
\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, J. David Painter, and
Shannon J. Gremilion, Judges.
**REVERSED AND REMANDED**

**EDWIN DUNAHOE (Bar # 05164)**
**DUNAHOE LAW FIRM**
**402 Second Street**
**P.O. Box 607**
**Natchitoches, LA 71457**
**Tel. (318) 352-1999**
**Fax. (318) 352-5222**
**Counsel for Plaintiff-Apellant:  Jill Barnhill**

**GEORGE D. FAGAN (Bar # 14260)**
**PATRICK WARTELLE (Bar # 14484)**
**CATHERINE L. DAVIDSON (Bar # 27792)**
**Leake & Anderson, L.L.P.**
**1100 Poydras Street**
**New Orleans, LA 70163**
**Tel. (504) 585-7500**
**Fax (504) 585-7775**
**Defendants-Appellees: Lynn H. Wood, et al.**

**COOKS, Judge.**

# FACTS AND PROCEDURAL HISTORY

Plaintiff's mother and father established a revocable inter vivos trust entitled "The Rodgers Living Trust of 1993" which instrument was signed and executed on September 27, 1993. The instrument was an authentic act, signed by Mr. and Mrs. Rodgers specifically as "trustees" and "settlors" in the presence of a notary and two witnesses. Both parties agree that this Trust was a valid Louisiana Trust established in conformity with the provisions of the Louisiana Trust Code, LA. R.S. 9:1721, et seq. Included in the provisions of the 1993 Trust were provisions for the establishment of two trusts in the event of the death of the first Settlor, identified as the Rodgers Trust "A" and the Rodgers Trust "B." On the same date the 1993 trust was established, Plaintiff's mother executed a Power of Attorney appointing her husband as her agent with authority to transfer property into the trust. Under the authority of the Power of Attorney, and in his own right, Mr. Rodgers signed an IRA Adoption Agreement on November 30, 1999, affecting the couples' entire interest in his IRA bearing number 321-739473. Mr. Rodgers listed he and his wife as Trustees of the Rodgers Living Trust of 1993 as the primary beneficiaries of the entire IRA account and listed his children, Mrs. Jill Barnhill and Mr. Richard D. Rodgers, Contingent Beneficiaries.

Plaintiff's father, Mr. Billy Howard Rodgers, passed away on July 13, 2003. At the time of Mr. Rodgers' death, Plaintiff's mother, Mrs. Frances Smith Rodgers, was mentally incapacitated due to Alzheimers Disease. Mrs. Rodgers passed away a few months later on December 4, 2003. Subsequent to Mrs. Rodgers' death, in March, 2004, Plaintiff and her brother contacted Defendant Wood concerning the investment of the assets held in trust. The parties agree that Plaintiff and her brother wanted the IRA funds to be handled in a tax deferred manner in what is known as a

Beneficiary IRA. Eventually, Plaintiff received notification from Defendant Wood that the IRA funds had been distributed in such a fashion as to create a taxable event. Plaintiff claims this distribution caused she and her brother a loss of at least $141,000.00. Issues concerning the propriety of Woods decision to place the funds in an Individual IRA rather than in a Beneficiary IRA, and other actions, are not before this court on this appeal and therefore will not be addressed.

Subsequent to Plaintiff filing her Petition, the trial court issued an Order granting the parties' Joint Motion For Stay of the proceedings in recognition of an arbitration agreement binding on the parties. Defendants filed a Motion For Declaratory Judgment, and both parties filed a Joint Motion To Partially Lift Stay so as to allow the trial court to hear the Motion For Declaratory Judgment. Following a hearing on the Motion, the trial court entered a declaratory judgment finding that only one trust had been created, namely the Rodgers Living Trust of 1993. The trial court ruled that Rodgers Trust "A" and Rodgers Trust "B" were not created. Plaintiff appeals the declaratory judgment.

ANALYSIS

The trial court erred as a matter of law. The instrument signed by Mr. and Mrs. Rodgers in 1993 established both a valid inter vivos trust and valid testamentary trusts. The Trust Code defines a trust as: "[t]he relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another." La. R.S. 9:1731. The Trust Code further distinguishes testamentary trusts and inter vivos trusts as follows: "A trust is testamentary when it is created by donation mortis causa," La. R.S. 9: 1733, and "All Trusts not testamentary are considered inter vivos, regardless of the time of creation." La. R.S. 9: 1734. As to the form of trusts, the Code provides that an inter vivos trust can be

-3-

created by authentic act, as was the Rodgers Living Trust of 1993. See La. R.S. 9: 1752. Additionally, the Code provides: "No particular language is required to create a trust, but it must clearly appear that the creation of a trust is intended. A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation." La. R.S. 9:1753. See also *St. Charles Land Trust v. St. Amant*, 217 So.2d 385, (La.1968). The Trustee(s) may, as Mr. and Mrs. Rodgers did in the instrument at issue herein, accept the trust in the trust instrument itself. La. R.S. 9:1755.

There can be no doubt that the instrument signed by the Rodgers in 1993 clearly expressed the intent to create an inter vivos trust, effective immediately, and two testamentary trusts which would take effect upon the death of the first Settlor (Mr. or Mrs. Rodgers). The Rodgers placed property in the living trust at its inception and thereafter placed additional property, the IRA, into the trust. Under the express provisions of the Louisiana Trust Code, the testamentary trust, properly made by the authentic act of the Rodgers, was created automatically by operation of law "at the moment of the settlor's death, without awaiting the trustee's acceptance of the trust." La. R.S. 9:1821. Thus, contrary to the Defendants' argument and the trial court's ruling, the Trustee (or co-trustees due to the Trustee's incapacity) did not have to do anything after Mr. Rodgers' death for the testamentary trusts to be created. As noted in *Grant v. Grant*, 35-635 (2/27/02), 810 So.2d 1226, *writ denied*, 02-1046 (La. 6/14/02), 817 So.2d 1158:

> "The trust instrument is not required to contain specific language of conveyance provided it is clear that title is being transferred to the trustee, because the creation of a trust automatically and by definition effects a transfer of title to the trust property pursuant to LSA - R.S. 9:1731. The trust instrument must identify the property being transferred in trust either specially, as in a description of land, or generally, as under a universal legacy. 11 Leonard Oppenheim & Sidney Ingram, Louisiana Civil Law Treatise, trusts Sect. 102 (1977)." *Grant,*

*Supra.* at 1229.

In *Grant*, the trust instrument identified specific immovable property and generally identified all other property owned by the Grants. In the case *sub judice* the trust instrument identified the trust property as "$100.00 cash and all of Settlors' personal possessions, wherever located, together with such other property as may be added by Settlors or by third persons. Settlors hereby convey, to Trustee in trust all of their rights, title, and interest in that property." After creation of the 1993 Trust, Mr. Rodgers later transferred his IRA into the trust by appropriate legal means. Further, the trust instrument provided that the property comprising the two testamentary trusts would be the corpus of the 1993 trust. The instrument recites at Paragraph 3.3 and 3.4 that Rodgers Trust "A" and Rodgers Trust "B" would consist of the property in the Rodgers Living Trust of 1993, and further accorded the surviving Settlor, or in his/her incapacity, the co-trustees, the right to select which property to place in the revocable Trust "A" and which to place in the irrevocable Trust "B".

Mrs. Rodgers signed the original trust instrument in 1993 both as Trustee and Settlor, and as such did not have to do anything in writing to accept the testamentary trusts after the death of Mr. Rodgers. See La. R.S. 9:1824. The 1993 trust instrument specifically named Mrs. Barnhill and her brother Mr. Rodgers as alternate co-trustees in the event of the death or physical/mental disability of the original trustees. No action was required to create the testamentary trusts. The co-trustees could thereafter seek financial advice, as they did, to determine how to handle assets subject to placement at their discretion into Trust "A" or Trust "B".

**DECREE**

The judgment of the trial court is reversed and the case is remanded for further proceedings in accordance herewith, and all costs of this appeal are assessed against the Defendants.

**REVERSED AND REMANDED.**