ROSA TABORA QUIROZ

VERSUS

WAL-MART LOUISIANA, LLC

NO. 21-CA-389

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 799-920, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

February 23, 2022

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
    **JJM**
    **FHW**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ROSA TABORA QUIROZ
John W. Redmann
Edward L. Moreno
Travis J. Causey, Jr.
Benjamin B. Perkins

COUNSEL FOR DEFENDANT/APPELLEE,
WAL-MART LOUISIANA, LLC
Isidro R. DeRojas
Christopher James-Lomax

**MOLAISON, J.**

The plaintiff/appellant in this matter, Mrs. Rosa Quiroz, appeals the trial court's ruling that granted summary judgment in favor of the defendant, Wal-Mart Louisiana, LLC, and dismissed her case with prejudice. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 27, 2019, Mrs. Quiroz filed a petition for damages at the Twenty-Fourth Judicial District Court which alleged that she had sustained several injuries after she slipped and fell at a Kenner Wal-Mart on June 30, 2019. In her petition, Mrs. Quiroz claimed that the accident took place near the produce aisle, and that she had slipped in what appeared to be "spilled juice."[1]

On December 5, 2019, Wal-Mart answered the petition and denied any liability. Thereafter, on February 25, 2021, Wal-Mart filed a motion for summary judgment on the basis Mrs. Quiroz could not meet her burden of proof under La. R.S. 9:2800.6, the Louisiana Merchant Liability Statute. Specifically, Wal-Mart argued Mrs. Quiroz could not prove it created or had actual or constructive knowledge of the allegedly hazardous condition, an essential element of her claim, because she had failed to demonstrate that the alleged substance on the floor existed for such a period of time that it would have been discovered if Wal-Mart had exercised reasonable care.

In support of its motion for summary judgment, Wal-Mart submitted the deposition testimony of Mrs. Quiroz, wherein she testified that she did not know (1) where the alleged substance upon which she slipped came from; (2) what caused it; (3) how long the substance was present on the floor prior to her fall, or; (4) whether anyone at the store had actual knowledge that the alleged substance

---

[1] In her deposition testimony, Mrs. Quiroz identified the liquid she slipped in as "Gatorade." She explained that she assumed the liquid was Gatorade because she slipped next to the "Gatorade display"; however, she did not recall seeing any bottles on the floor before or after she fell.

was present on the floor before she fell. Wal-Mart also included in its motion the deposition of Mrs. Quiroz's husband, Ufemio Rojas, who testified that he did not know what type of liquid was in the spill. Mr. Rojas also did not know where the liquid had come from or how long it had been on the floor before his wife's accident. He estimated that the size of the spill after the accident was a little larger than two legal-sized sheets of paper.

Additionally, Wal-Mart submitted the deposition testimony of three employees: Vincent Robinson, Gina Cotton, and Alcira Mejia.

Mr. Robinson recalled at his deposition that on that date of the accident, he was employed by Wal-Mart as an assistant store manager. He had walked down the aisle in the same area of the fall just minutes before Mrs. Quiroz, and did not see any liquid on the floor. He stated that, at the time of Mrs. Quiroz's accident, he was speaking to a fellow assistant store manager, Gina Cotton, at the end of the same "action alley" where Mrs. Quiroz fell. Mr. Robinson recalled that he first learned of the accident when a male customer insisted on getting Mr. Robinson's attention to tell him that the customer had "just spilled a Gatorade on the floor." Mr. Robinson testified that he was approximately six feet away from the spill. As soon as the customer had provided the information, Mr. Robinson followed the store's policy and began to turn and walk toward the spill in order to stop anyone from stepping into it. Mr. Robinson said that within a couple of seconds of being informed of a spill, or nearly simultaneously, Mrs. Quiroz fell. He did not personally witness Mrs. Quiroz fall. After the accident, Mr. Robinson was brought an iPad by Ms. Cotton and he began to draft an incident report. Mr. Robinson explained that he did not get the name of the male customer, who had walked away from the area after reporting the spill, because he was tending to Mrs. Quiroz and did not want to leave her on the floor. He also did not observe the cause of the spill.

Ms. Cotton, during her deposition testimony, stated that she was employed by Wal-Mart as an assistant manager on the date of Mrs. Quiroz's slip and fall. She recalled that, at approximately 1:00 p.m., she was speaking to Mr. Robinson, and letting him know that she was leaving for the day because she felt ill. Similar to Mr. Robinson's testimony, Ms. Cotton stated that a male customer indicated to her and Mr. Robinson that he had "just spilled" something when, at the same time, she observed Mrs. Quiroz begin to slide on the floor. Aside from obtaining an iPad for Mr. Robinson, she had no involvement in writing the accident report. She did not see any liquid on the floor prior to Mrs. Quiroz's fall. Ms. Cotton recalled that the male customer who had indicated he spilled the Gatorade told Mr. Robinson that he did not want to give a statement. After bringing Mr. Robinson the iPad, Ms. Cotton briefly walked past the area of the liquid and noticed a Gatorade bottle on the floor with a "broken top."

The final deposition included in Wal-Mart's motion was that of Ms. Alcira Mejia, who was employed by Wal-Mart as a cleaner in the strategic maintenance department on the date of the accident. Ms. Mejia could provide no information about how long the liquid may have been on the floor before Mrs. Quiroz slipped and fell, though she did acknowledge that she found a Gatorade bottle on the floor when she was cleaning the area after the fall.

Based on the evidence presented, Wal-Mart argued in its motion for summary judgment that Mrs. Quiroz could not prove that it had constructive notice of a hazardous condition that existed on the floor for some period of time prior to her fall and, thus, could not carry her burden of proof of this element at trial.

In opposing Wal-Mart's motion, Mrs. Quiroz argued that there was a genuine issue of material fact of what exactly the unknown male customer said to Mr. Robinson and Ms. Cotton about when the spill occurred. She also argued that there were credibility issues with the deposition testimony of Mr. Robinson and

Ms. Cotton that created issues of material fact. Finally, Mrs. Quiroz asserted that there were issues of fact regarding whether Wal-Mart had exercised care and diligence in inspecting its aisles and proactively looking for hazards. In her opposition to the motion for summary judgment, Mrs. Quiroz attached a copy of Wal-Mart's own internal claim report regarding her accident, Wal-Mart's answers to interrogatories,[2] and a store video from the date of the fall.

The trial court granted Wal-Mart's motion for summary judgment on May 11, 2021, following a hearing on May 6, 2021. This timely devolutive appeal by Mrs. Quiroz followed.

## ASSIGNMENTS OF ERROR

On appeal, Mrs. Quiroz first contends that the trial court erred in granting Wal-Mart's motion for summary judgment based upon its finding that she would be unable to sustain her burden of showing Wal-Mart had constructive notice of the spill that allegedly caused her fall. Ms. Quiroz also asserts that the trial court erred in concluding that her evidence was speculative and in failing to recognize "circumstantial evidence" which created a genuine issue of material fact.

## LAW AND ANALYSIS

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing a motion for summary judgment, and all doubt must be resolved in the opponent's favor. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (*per curiam*). In determining whether summary judgment is appropriate, appellate

---

[2] The documents referenced in Wal-Mart's answers to interrogatories do not appear in the record on appeal.

courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

*The trial court's reasons for judgment*

On appeal, to support her argument that the trial court improperly analyzed the evidence presented, Mrs. Quiroz relies heavily on trial court's written reasons for judgment in which it explained the finding that what Mrs. Quiroz considered to be evidence of how the liquid ended up on the floor was "speculative." Mrs. Quiroz also contends that the trial court erred in concluding that her evidence was speculative, as indicated in its reasons for judgment, because she did but not articulate other scenarios that would explain why the floor was wet at the time of the fall.

As noted by the Louisiana Supreme Court in *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61 So.3d 507, 572, while an appellate court is entitled to consider reasons for judgment in order to gain insight into a district court's judgment, the job of the appellate court is to review the district court's judgment, not its reasons for judgment. Similarly, this Court has previously found that the reasons for judgment form no part of the judgment on appeal. *See, Wempren v. St. James Par. Sch. Bd.,* 15-709 (La. App. 5 Cir. 5/12/16), 193 So.3d 349, 354. Because an appellate court's standard of review of a judgment granting or denying summary judgment is *de novo*, we are not restricted to only a review of the reasoning of the trial court. *Bertaut v. Corral Gulfsouth, Inc.*, 16-93 (La. App. 5 Cir. 12/21/16), 209 So.3d 352, 359.

*Merchant liability and the element of notice*

Louisiana's Merchant Liability Statute, La. R.S. 9:2800.6, which is applicable to this case, provides in relevant part:

A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

As indicated above, the plaintiff must prove that the merchant either created or had actual or constructive notice of the condition which caused the damage prior to the occurrence. *Upton v. Rouse's Enter., LLC*, 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, 1200, *writ denied*, 16-0580 (La. 5/13/16), 191 So.3d 1057. Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. *Sears v. Home Depot, USA, Inc.*, 06-201 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228, *writ denied*, 06-2747 (La. 1/26/07), 948 So.2d 168. Even if contained in a deposition, such

inferences, allegations, and speculation are not sufficient to satisfy the opponent's burden of proof. *Id.*

*The temporal element*

A plaintiff who relies upon constructive notice under La. R.S. 9:2800.6(B)(2) must come forward with "positive evidence" showing the damage-causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence. *Flowers v. Wal-Mart Stores, Inc.*, 12-140 (La. App. 5 Cir. 7/31/12), 99 So.3d 696, 699. This is referred to as a "temporal" element. *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97), 699 So.2d 1081. As this Court explained in *Batiste v. United Fire & Cas. Co.*, 17-482 (La. App. 5 Cir. 3/14/18), 241 So.3d 491, 498:

> Absent some showing of the temporal element, there can be no inference of constructive notice. *Id.* The plaintiff must make a positive showing of the existence of the condition prior to the fall; mere speculation that the condition may have existed for some period of time is insufficient. *Babin*, 00-0078, p. 7, 764 So.2d at 40. To the contrary, a defendant merchant is not required to make a positive showing of the absence of the existence of the condition prior to the fall. *White*, 97-0393, p. 9, 699 So.2d at 1084. Notwithstanding that such would require the defendant to prove a negative, La. R.S. 9:2800.6 simply does not provide a shifting of the burden. *Id.*, 97-0393, pp. 9-10, 699 So.2d at 1084.
> While there is no bright-line time period, the plaintiff must show that the condition existed for "such a period of time ..." *Id.*, 97-0393, p.10, 699 So.2d at 1084. Whether the period of time is of sufficient length such that a merchant should have discovered the condition is necessarily a fact question; however, as a prerequisite, the plaintiff must first show "some time period." *Id.* A plaintiff who merely shows that the condition existed, without an additional showing that the condition existed for some time prior to the fall, has failed to carry the burden of proving constructive notice as mandated by the statute. *Id.* Though the time period need not be specific in minutes or hours, constructive notice requires that the plaintiff prove the condition existed for some time period before the fall. *Flowers*, 12-140, p. 7, 99 So.3d at 700.

As noted above, the main focus of Wal-Mart's motion for summary judgment was its contention that Mrs. Quiroz would be unable to satisfy her burden of proof at

trial under La. R.S. 9:2800.6 because she had not put forth any evidence that Walmart created or had actual or constructive notice of the condition that she alleges caused her to slip and fall on its premises. Conversely, Mrs. Quiroz argued that Wal-Mart had constructive notice of the hazardous condition because it had existed for such an amount of time that Wal-Mart should have discovered the condition using reasonable care.

In conducting our own *de novo* review of the record, we first observe that Mrs. Quiroz did not establish, through her exhibits in opposition to the motion for summary judgment, how long the liquid which allegedly caused her to slip was on the floor. The Wal-Mart incident report provides no details about the slip and fall. Specifically, there is no indication in the report of how long the liquid had been on the fall prior to the accident. Likewise, the other two exhibits included in Mrs. Quiroz's opposition, Wal-Mart's answers to interrogatories and a store video from the date of the accident, provide no information on when the liquid at issue leaked or was spilled.

The only direct evidence of a temporal element regarding how long the liquid at issue may have been on the floor comes through the testimony of assistant store managers, Mr. Robinson and Ms. Cotton. Both recounted that an unknown male customer indicated that he had caused a spill within seconds, or contemporaneously, with Mrs. Quiroz's slip and fall. While Mrs. Quiroz discounts the credibility of Mr. Robinson's and Ms. Cotton's testimony, we note that a trial court cannot make credibility decisions on a motion for summary judgment. *Hutchinson v. Knights of Columbus, Council No.* 5747, 03-1533 (La. 2/20/04), 866 So.2d 228, 234. In deciding a motion for summary judgment, the court must assume that all of the witnesses are credible. *Independent Fire Ins. Co. v. Sunbeam Corp.,* 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226, 236.

Mrs. Quiroz also argued in opposition to the motion for summary judgment that a genuine issue of material fact as to "how long the Gatorade bottle was leaking on the floor, because the Gatorade bottle's cap was still intact, and the liquid that was leaking on the floor covered an area of two legal-sized sheets of paper held side by side." In *Luft v. Winn Dixie Montgomery, LLC*, 16-559 (La. App. 5 Cir. 2/8/17), 228 So.3d 1269, the plaintiff filed suit against a grocery store after she slipped on piece of pizza that had been frozen. In opposing the store's motion for summary judgment, the plaintiff argued that the thawed condition of the pizza was evidence of how long it had been on the floor prior to the plaintiff's fall. This Court acknowledged that the condition of an object, such as whether a previously frozen object has melted, may be considered by the factfinder as circumstantial evidence relating to the temporal element, along with other evidence that may be indicative of how long a hazardous condition may have existed. *Id.* at 332. The panel also qualified that finding with the statement that "[t]o rely solely upon the thawed condition of the pizza as indicative of the length of time that it was present at the location of [the plaintiff's] fall is … merely speculative." *Id.* Unlike the facts in *Luft*, in the instant case the cause of the spill that Mrs. Quiroz slipped in has not been positively identified and examined. Evidence of a Gatorade bottle in the vicinity at the site of the fall certainly could be considered as circumstantial evidence. Similar to the reasoning in *Luft*, however, even assuming that the liquid originated from a Gatorade bottle, we find the plaintiff's proposition that the volume of liquid on the floor definitively indicates that a spill or leak occurred over a longer period of time is speculative.

Mrs. Quiroz argues there are genuine issues of material fact about whether Wal-Mart exercised care in conducting frequent sweeps to prevent accidents like the one at issue. While the evidence regarding the adequacy and timing of the floor inspections may be relevant for proving a failure to exercise reasonable care

to discover a hazardous condition, a delay in the performance of such procedures offers no proof of how long any such condition may have been on the floor, a separate and equally essential requirement of Mrs. Quiroz's burden of proof under Section 9:2800.6. *Batiste*, *supra* at 501.

## CONCLUSION:

While Mrs. Quiroz has demonstrated that the condition which caused her fall existed, she has not made an additional showing that the condition existed for some time prior to the fall. Therefore, after a *de novo* review, we find that Mrs. Quiroz has failed to carry the burden of proving that Wal-Mart had constructive notice of the condition. Because Mrs. Quiroz cannot meet her burden of proving that Wal-Mart had prior constructive notice of the condition, which is essential to her claim under La. R.S. 9:2800.6, we find no error in the trial court's judgment that granted summary judgment in favor of Wal-Mart. Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 23, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-CA-389**

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
BENJAMIN B. PERKINS (APPELLANT)    EDWARD L. MORENO (APPELLANT)    KELLY S. RIZZO (APPELLANT)
ISIDRO R. DEROJAS (APPELLEE)       PETER S. MARTIN (APPELLEE)      SIDNEY J. HARDY (APPELLEE)

### MAILED

CHRISTIAN A. GALLEGUILLOS
(APPELLANT)
JOHN W. REDMANN (APPELLANT)
LISA Z. GILMORE (APPELLANT)
TRAVIS J. CAUSEY, JR. (APPELLANT)
ATTORNEYS AT LAW
1101 WESTBANK EXPRESSWAY
GRETNA, LA 70053

CHRISTOPHER JAMES-LOMAX
(APPELLEE)
ATTORNEY AT LAW
909 POYDRAS STREET
SUITE 1000
NEW ORLEANS, LA 70112